UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JONAH  LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-00381-JMS-DKL |
| | ) | |
| WENDY KNIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Jonah Long brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendant has violated his First Amendment rights by restricting his right to communicate with his fiancé, Kami Clemens.[1] The defendant moved for summary judgment and Long has filed a cross motion for summary judgment. For the following reasons, the defendant's motion for summary judgment [dkt 65] is **granted** and Long's cross motion [dkt 69] is **denied**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light

---

[1] After the denial of his request for communication and after the filing of his complaint, Long was moved to the Correctional Industrial Facility ("CIF"). As Long was no longer able to obtain the injunction relief sought in his complaint from Superintendent Richard Brown, Superintendent Wendy Knight of CIF was substituted as the Defendant in this matter.

most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490.

When faced with cross motions for summary judgment, the Court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant. *Brownlee v. City of Chicago,* 983 F.Supp. 776, 779 (N.D.Ill.1997).

## II. Factual Background

At the time this lawsuit was filed, Long was incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley"). While incarcerated at Wabash Valley, Long requested to communicate with an offender at another facility, Kami Clemens. Long stated in his requests for communication that Kami Clemens is his fiancée. His requests were denied and he filed this lawsuit.

A. *The Offender Correspondence Policy*

The Indiana Department of Correction ("IDOC") has a policy in place that governs offender correspondence. The purpose of the policy is to establish a mechanism for offenders to maintain contact with persons in the community through correspondence, printed materials and packages in a way that ensures the safety and security of the offenders involved and of the facilities. The Offender Correspondence policy governs restricted correspondence, which includes correspondence between offenders held in other correctional facilities. The burden of obtaining permission for restricted correspondence is with the offender. The offender must establish that the exchange of correspondence is in the best interests of both the confined persons and the facilities involved. According to the defendant, allowing communication between offenders housed at

different facilities creates serious safety concerns for offenders and prison staff. IDOC takes the safety and security of all offenders and staff very seriously. The safety and security of offenders and staff is the reason why offenders must show that communication between offenders would be in the best interests of the offenders and the facilities. Several of the factors that IDOC considers when deciding whether communication between offenders is in the best interest of the facility is the familial relationship between the offenders, whether the offenders have a child together, their prior criminal history, and their prior personal history.

B. *Long's Requests for Communication*

While he was incarcerated at Wabash Valley, Long requested to communicate with Clemens and that request was denied. Long has not requested to communicate with Clemens while incarcerated at CIF. However, a review of Long's previous requests, and the documentation found in his offender packet and other documents available to DOC, would lead officials at CIF to deny his request for correspondence with Kami Clemens, if he were to submit such a request.

Long and Clemens are not immediate family, nor do they have a child together. In addition, Long and Clemens are listed as co-defendants on confidential documents found in Long's offender packet and they both have a history of drug abuse and/or distribution. First, in July of 2012, Clemens was driving away from a home that was under police surveillance for suspected drug activity. Her car was stopped and searched by police who discovered and seized crystal methamphetamine and other drug paraphernalia. She told police that Long was in the residence at the time. Then, according to the opinion of the Indiana Court of Appeals on the appeal of Long's conviction, on September 7, 2012, Indiana State Police officers were conducting a narcotics investigation at a hotel in Indianapolis. When they knocked on the door of a room registered to Long, Clemens opened the door. In the room, the officer found digital scales and glass pipes. The

officer then advised other officers to look for Long. Later, officers observed Long approach the hotel and signaled him to stop, at which time he stopped the car, exited the car, and ran away.

IDOC has determined that communication between Long and Clemens is not in the best interests of the facility or the offenders. Offenders have previously used written communication for purposes of gang-related and drug-related activity, and such communications need to be carefully monitored. Because the status of "fiancé" is impossible to document and can be declared or removed by offenders at any time, mandating communications between fiancés at different facilities may effectively require IDOC to create an entirely new and costly framework for dealing with illicit offender-to-offender communication sent under the guise of being love letters.

### III. Discussion

The defendant moves for summary judgment arguing that the denial of the request to communicate did not violate Long's First Amendment rights. Long responded and filed a cross motion for summary judgment arguing that the denial is arbitrary and does violate his rights.

The Seventh Circuit has held that constitutionality of a rule prohibiting correspondence between inmates at different institutions "cannot be doubted." *Farrell v. Peters*, 951 F.2d 862 (7th Cir. 1992) (citing *Gometz v. Henman,* 807 F.2d 113 (7th Cir. 1986)). The plaintiff in *Farrell*, an Illinois state prisoner, sued prison officials who prohibited him from corresponding with his "common law" wife, an inmate at another Illinois institution. The denial was based on a prison rule which provided that "permission for committed persons to correspond between intra-state and inter-state correctional facilities shall require the approval of the Chief Administrative Officers of both facilities and shall be based on safety and security concerns." In finding that the prison rule and the denial of the request to communicate did not violate the plaintiff's First Amendment rights, the Seventh Circuit explained:

> The potential dangers from correspondence among inmates in this age of prison gangs-some nationwide in extent, *United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984)-are obvious. The plaintiff argues as a backup that the rule was applied arbitrarily to him and his "common law" wife, but he gives no particulars as to why it might have been arbitrary and since the two were criminal confederates in pimping and prostitution before they were imprisoned for those offenses the arbitrariness of the defendants' actions hardly leaps out at us.

*Farrell v. Peters*, 951 F.2d 862, 863 (7th Cir. 1992).

The IDOC policy at issue in this case is similar to the Illinois rule in *Farrell*. The IDOC rule states that an offender must obtain prior approval from the IDOC to receive or send correspondence to another person if the other person is held in a correctional facility. The policy also states: "the offender must establish that the exchange of correspondence is in the best interests of both the confined person and the facilities involved." The defendant has explained that this is rule is based on the need to allow offenders to maintain contact with people in the community while ensuring the safety and security of inmates and personnel in the correctional facilities. Like the rule in *Farrell*, the constitutionality of the rule at issue here is clear.

Long asserts that his request for communication was denied simply because he and Clemens are not married.[2] He argues that the requirement that offenders who seek to communicate with each other be related is not logically related to penological interests because there is no logical argument that communication between non-family members creates a different security concern than that between family members. As the defendant explains, to help ensure the security of the facilities, offenders who request to communicate with each other must show that the communication would be in their best interest and the best interest of the facilities. In making this determination, the IDOC considers several factors, including the familial relationship between the

---

[2] In certain points of his argument Long seems to suggest that they are married, stating that Clemens is his spouse, but he has presented no independent evidence that they are married and repeatedly refers to her as his "fiancé."

offenders, whether the offenders have a child together, their prior criminal history, and their prior personal history. Thus, whether the offenders are family is only one of the factors considered when reviewing a communication request.

Long also argues that the defendant did not provide adequate evidence to justify the legitimate penological interest. But the defendant did present evidence supporting the policy – that offenders have used written communication for purposes of gang-related and drug-related activity. Moreover, the relevant case law also supports this proposition. *See Turner*, 482 U.S. 78, 91-92 (1987) ("undoubtedly, communication with other felons is a potential spur to criminal behavior: this sort of contact frequently is prohibited even after an inmate has been released on parole."); *Farrell*, 951 F.2d at 863.

Long further argues that the rule has been applied arbitrarily to him. He bases this argument on his assertion that other inmates have been permitted inter-facility correspondence and that he received evolving arbitrary explanations for the denial of his request. But Long has failed to show arbitrariness based on the other communications he alleges were allowed. First, because the decision whether to allow offender communication depends on a number of factors, Long cannot show that the decision to deny his communication request was arbitrary merely because others were permitted to communicate. In addition, the offenders who were allowed to communicate, according to Long, had immediate family relationships unlike Long and Clemens.

Long also argues that the denial of his communication request was arbitrary based on what he characterizes as differing responses he received to his request at various levels. He provides evidence that he was initially told that only immediate family members or people who share children can be approved to correspond. Then, when he filed a grievance on the issue, he was told "that being allowed to correspond with another confined person is a special privilege that [IDOC

decided] based on the best interest of both the confined persons and the facilities involved. Since you are not related and do not have children together and it is not for the purpose of re-entry planning, we do not feel it is in the best interest of the facilities to allow you to correspond." The defendant argues that these responses to Long's communication requests and grievances do not show changing standards, but each focus on institutional safety and show that a familial relationship is an important, but not necessarily dispositive, factor. The evidence is that, in considering Long's communication requests, the IDOC considered his relationship with Clemens and the best interests of the facilities involved. Long has failed to show any arbitrary action on the part of the IDOC.

Long also challenges the defendant's characterization of his and Clemens's crimes. The defendant asserts that the denial of the communication request is reasonable because Long and Clemens were involved in similar criminal activity. Long asserts the conclusion is not reasonable because he and Clemens were not charged or tried together. The defendant's argument that Long and Clemens were involved in criminal activity together is based two events in which Long and Clemens were discovered by police involved in drug activity. First, in July of 2012, Clemens was found in possession of crystal methamphetamine and drug paraphernalia after leaving a home at which Long was staying. A short time later, Clemens was found in a hotel room registered to Long. In the room were scales used for weighing drugs and glass pipes. Based on these two incidents, it is reasonable for the IDOC to conclude that Long and Clemens were involved in criminal activity together.

In short, the denial of Long's request to communicate with Kami Clemens was based on sound IDOC policy, supported by relevant legal precedent, and was not arbitrary. Accordingly Long's First Amendment rights were not violated.

**IV. Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment [dkt 65] is **granted** and Long's cross motion [dkt 69] is **denied.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: <u>November 8, 2016</u>

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Jonah Long
103975
Pendleton - CIF
Correctional Industrial Facility
5124 West Reformatory Road
Pendleton, IN 46064

All electronically registered counsel